# JOSEPH ALBANESE

Attorney at Law

915 Lacey Road
Forked River, New Jersey 08731
Phone: 609-971-6200   Fax: 609-971-6300
e-mail: jabanklaw1@aol.com

September 11, 2009

Honorable Michael B. Kaplan
United States Bankruptcy Court
402 East State Street
Trenton, NJ 08608

     RE:   **VICTOR CAOLA**
             **Chapter 13 - Case No. 08-28385-(MBK)**

     **LETTER BRIEF IN SUPPORT OF MOTION TO DISMISS AND
     IN OPPOSITION TO TRUSTEE'S MOTION TO COVNERT**

Dear Judge Kaplan:

Debtor respectfully submits this letter brief, in lieu of a more formal brief, in support of Debtor's Motion for Dismissal, and in Opposition to the Trustee's Motion for Conversion to Chapter 7.

# I. STATEMENT OF FACTS

Debtor filed his Chapter 13 bankruptcy on September 25, 2008. During the pendency of this case, the debtor made full disclosure of all relevant facts. The main factual issue involves the Debtor's marital residence. Approximately one year prior to filing, the Debtor and his wife refinanced their marital residence. The Debtor made no attempt to conceal this fact.

To the contrary, from the very beginning the Debtor treated the marital property as if he were still a fifty percent (50%) owner, disclosing his intent. See **Exhibits A - 1, 2, 3**.

Moreover, in his Plan and Schedules, the Debtor explicitly proposes to "re-convey" his one-half interest back to himself. **Exhibit A-4**. In short, not only has this debtor not made any misrepresentations, but he provided all relevant information to the Trustee, starting with the filing of the petition.

From the beginning, Mr. Caola, a former attorney, maintained that there was nothing "fraudulent" about the transfer of his one-half residential interest to his wife. He insisted that it was a requirement imposed by the lender as a condition of refinancing. Through our own investigation, the Debtor has obtained documents from the closing agent. These documents show, conclusively, that the conveyance

by Debtor to his wife was a requirement of closing – not a decision initiated by the Debtor. **Exhibits B - 1, 2**.

The Debtor cooperated fully with the Trustee during the pendency of this case, by providing copies of the Deed, HUD-1 Closing Statement, the wife's income, and all other requested documents. The Trustee's demands for documentation have been voluminous. The debtor complied fully. Attached hereto, as **Exhibits A - 6, 7, 8, 9,** respectively, are various cover letters to the Trustee, which accompanied various documents sent to him. (For convenience, we have not attached the documents themselves). As can be seen, the Debtor provided voluminous documentation as requested by the Trustee.

In connection with the hearing on August 4, 2009, the Debtor sent to Chambers (and to the Trustee) additional documentation, this latest batch of documents being in response to the trustee's Interim Order. These documents included a medical expert's report, updated income information for Mrs. Caola, closing documents, and other documents (See **Exhibit A-10**, attached hereto). Again, the Debtor cooperated fully.

During the pendency of the case, Nicholas and Carol Zarrillo (hereafter "Zarrillo") filed an Adversary proceeding, alleging that the Debtor "fraudulently transferred" his one-half interest in the marital residence to his wife prior to filing. Zarillo's allegations are essentially the same of those as the Trustee. Zarrillo filed a

proof of claim for $200,000.00. Recently, Zarrillo settled his claim for the total sum of $7,500.00 - roughly 3 ½ *cents* on the dollar. No other creditor has filed any adversary proceeding, or contested this matter in anyway (other than a "pro-forma" objection from Indy Mac, which was not pursued aggressively).

No party in interest other than Zarrillo has filed any objection to the Debtor's Plan (except the Trustee himself). The Trustee has essentially echoed the Zarrillo claim, alleging fraudulent transfer of the Debtor's one-half interest in the marital property. The Debtor disputed those allegations.

The Debtor has a serious medical condition. The Debtor has been actively treated for this condition for a period of years. (See Expert Report from Dr. Kamm, attached hereto as **Exhibit C - 1, 2**). The Debtor's treating physician believes that litigation will adversely affect the Debtor's emotional health. The Debtor was treating for this condition long before the filing of the present case.

The Court conducted a hearing on August 4, 2009. The parties made their motions on the record. The Debtor moved for a dismissal, and the trustee moved for a conversion.

At the hearing on August 4, 2009, the parties stipulated that the documents and exhibits previously furnished to the court are *authentic,* i.e., that they are genuine, and they are what they appear to be. The parties did not stipulate as to the relevance, admissibility, or materiality of any document.

## II. THE DEBTOR'S RIGHT TO DISMISS HIS CASE <u>VOLUNTARILY IS ABSOLUTE</u>

The weight of authority, and the better reasoned decisions, hold that the Debtor's right to dismiss voluntarily in a Chapter 13 case is absolute. This is true *even if a Motion to convert the case is pending*. <u>In re: Barbieri</u>, 199 F.3d 616 (2d Cir. 1999). The right to dismiss expires only when an Order of Conversion is actually entered by the Court.

A starting point for analysis is the explicit language in 11 U.S.C. 1307(b). Section 1307(b) is clear, and requires no strained interpretation:

> "On request of the debtor <u>at any time, if the case has not been converted under section 706, 1112, or 1208</u> of this title, the Court <u>shall dismiss</u> a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable". (emphasis supplied).

This language is crystal clear, and should not be distorted through strained construction, merely because a particular party in interest would prefer conversion over dismissal. The right to dismiss has nothing to do with judicial "discretion". If the case has not previously been converted (this case has not been), the Court "<u>shall dismiss</u>" the case on request of the Debtor. (emphasis supplied).

A Debtor does not have to have a reason to dismiss, merely a desire to dismiss. Here, however, the Debtor has a compelling, understandable reason to dismiss. He

5

has already settled with his main antagonist (Zarrillo). Moreover, the Debtor's health will not tolerate the pressure of litigation. The Debtor's treating physician has confirmed that fact. (**Exhibit C**). It is no exaggeration to describe the Debtor's health as fragile.

In Barbieri, *supra*, the Second Circuit Court of Appeals offers what is probably the most complete analysis of Sec. 1307(b) and its interaction with 1307(c). The Court reviews all of the arguments for, and against, the proposition that a Debtor's right to dismiss his Chapter 13 case is absolute. The Second Circuit notes that the language in Sec. 1307(b) is clear, and that our courts do not have a license to rewrite the statute merely because someone feels it can be written more perfectly. Barbieri points out that there is no discretion built into 1307(b), and that the right to dismiss must be absolute in order to implement the spirit and philosophy of Chapter 13. The Court points out that Chapter 13 is intended to be purely voluntary. Moreover, if creditors could thwart a Debtor's intention to dismiss by using 1307(c), then creditors in effect could force an involuntary Chapter 7, while circumventing the strict rules of 11 U.S.C. 303. Certainly, Congress could not have intended such a result. See, generally, discussion at 199 F. 3d 617-621.

Moreover, as Barbieri notes, dismissal does not leave the creditors without a remedy. It merely shifts the arena to a state court. Mr. Caola's creditors can pursue their remedies there. The Bankruptcy Court could even protect the creditors under

11 U.S.C. 349(b), by ruling that current creditors shall not be subject to discharge in the future. In short, there is no unfairness to the creditors by allowing the Debtor to dismiss his case.

Numerous other cases are in agreement, holding that the debtor's right to dismiss is absolute, subject to only one, clearly stated exception - where the case has previously been converted. In re Greenberg, 200 B.R. 763 (Bankr. S.D.N.Y. 1996); In re Harper-Elder, 184 B.R. 403 (Bankr. D.C. 1995); In re Neiman, 257 B.R. 105 (Bankr. S.D. Fla. 2001); In re Patton, 209 B.R. 98 (Bankr. E.D. Tenn. 1997); In re Hearn, 18 B.R. 605 (Bankr. Neb. 1982).

To be sure, some courts have held that the right to dismiss is not absolute, and that it is subject to a "good faith" exception. However, several observations are in order. First, such a ruling flies in the face of the plain language of Section 1307 (b), which allows only *one* exception to the general rule (where the debtor has previously converted).

Second, this judicially created exception - even in jurisdictions that recognize the exception - is a narrow one: It applies only where the debtor has been guilty of serious misconduct, something amounting to a fraud on the court. There appears to be *no authority* for the proposition that Section 1307 (b) is a matter of "discretion" – i.e., that the Court can either apply Section 1307 (b) or ignore it, whatever the Court feels is best. This can be seen by reviewing those cases holding that the right to

dismiss is not absolute. A case in point is In re: Molitor, 76 F.3d 218 (8th Cir. 1996). There, the Debtor was guilty of multiple bankruptcy filings. The debtor "manipulated" the Bankrucpty Code, filing bankruptcy several times to prevent a lawful eviction, but failing to file a Plan within a reasonable time.

Another example is Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764 (9th Cir. 2008). There, the debtor defied the Bankruptcy Court by refusing to hand over $185,000.00, despite an explicit order to do so. The Debtor was about to "abscond" with $185,000.00 of money that did not belong to him.

Yet another case is In re Jacobsen, 378 B.R. 805 (Bankr. E.D. Texas 2007). In Jacobsen, the Court found that "the Debtor has been far from honest and forthright", and that he had concealed certain insider transactions involving his wife's property. The Court noted that the "debtor has deliberately failed to disclose substantial assets". In short, the factual situation in Jacobsen is precisely the *opposite* of the situation here.

Here, the Debtor – unlike the Debtor in Jacobsen – revealed his interest in the marital property from the very beginning. Indeed, Mr. Caola went a step further by proposing to re-convey the property to himself and his wife jointly in his Plan. Moreover, the Debtor has shown conclusively, with documentation, that the transfer to his wife was something required by the refinance lender roughly a year before filing. None of this even remotely resembles "bad faith" in the sense used by

Jacobsen, Molitor, and Rosson, *supra.* There is simply no factual basis for forcing this Debtor against his will into Chapter 7.

In all of these cases (Molitor, Rosson, and Jacobsen), the Court refused to allow a voluntary dismissal because the debtor had engaged in a fraud upon the Court. Here, by contrast, the debtor and his wife simply refinanced their home a year prior to filing. The lender required that the property be transferred to the wife's name as a condition. The debtor revealed all of this to the Court from the very beginning.

In short, although there is some authority to the contrary, better-reasoned decisions hold that the Debtor's right to dismiss is absolute. Moreover, even if, *arguendo*, this Court holds that the right to dismiss is not absolute, there is no factual basis for refusing *this* debtor's request to dismiss.

### III. EVEN IF, *ARGUENDO*, 11 U.S.C. 1307(C) HAS ANY APPLICATION, THIS DEBTOR SHOULD BE ALLOWED TO DISMISS TO HIS CASE, BECAUSE THE LANGUAGE IN 1307(C) IS PERMISSIVE, <u>NOT MANDATORY</u>.

As noted above, better-reasoned cases hold that the Debtor's right to dismiss is absolute, absent actual entry of a prior order converting the case. However, even if, *arguendo,* this Court should rule that debtor's right to dismiss is not absolute, the result in this case would be the same. Several observations are in order:

First, there is no reason for the Court even to reach Sec. 1307(c). The judicially created exception to 1307 (b) applies where the debtor has concealed assets or committed a fraud upon the Court. See <u>Molitor</u>, <u>Rosson</u> and <u>Jacobsen,</u> *supra.* Nothing like that has occurred here. Thus, on the facts of this case, 1307(b) trumps 1307(c), and there is no reason even to consider 1307(c).

Second, as the Court noted in <u>Barbieri</u>, *supra,* the language of 1307(b) is mandatory, while that of 1307(c) is permissive. See <u>Barbieri</u>, citing with approval <u>Sievers v. Green</u>, 64 B.R. 530 (B.A.P. 9th Cir. 1986). Section 1307(c) merely says that the Court *may* convert or *may* dismiss a case. It does not *require* conversion or dismissal, unlike the mandatory language of 1307(b), which states that the Court *shall* dismiss the case upon request of the debtor.

Third, even if, *arguendo,* a debtor is guilty of misconduct (which this debtor is not), bankruptcy courts typically choose to dismiss the case, not convert it. Dismissal

10

appears to be the "remedy" of choice in most situations. See <u>In re: Leavitt</u>, 171 F.3d 1219 (9th Cir. 1999) (court may dismiss a Chapter 13 case for lack of good faith); See also <u>In re: Love</u>, 957 F.2d 1350 (7th Cir. 1992); <u>Howard v. Lexington Invs., Inc.</u> (In re Howard), 284 F.3d 320 (1st Cir. 2002) (Court may dismiss case for unreasonable delay); <u>In re: Schmidt</u>, 215 B.R. 208 (D. Kan 1997) (Court may dismiss a case if the Debtor fails to file a Court order); <u>In re: Cobb</u>, 216 B.R. 676 (Bankr. M.D. Fla. 1998) (Court may dismiss if Debtor refuses to file Tax Returns); <u>Roberts v. Boyajian</u> (In re Roberts), 279 F.3d 91 (1st Cir. 2002) (Court may dismiss if Debtor fails to complete Plan payments);

Thus, even if, *arguendo*, 1307(c) is reached, the usual, more typical remedy under 1307(c) would be dismissal – not conversion.

Fourth, even where it does apply, Section 1307 (c) requires the Court to evaluate what is "in the best interest of creditors and the estate". It is hard to imagine that forcing this debtor into Chapter 7 would serve the interests of creditors. It would add a heavy layer of Chapter 7 administrative expenses, subordinating the claims of creditors to those of the Trustee. Moreover, there is no guarantee that a Chapter 7 Trustee would recover anything for the estate. A review of debtor's schedules shows meager assets overall, and real property with no equity.

In short, it is pure conjecture to assume that a Chapter 7 Trustee would have anything to distribute to creditors. It is worth noting that the only active creditor in this case, Zarillo, settled for the meager sum of 3 ½ cents on the dollar.

Based on the overall circumstances of this case, there is no justification for conversion to Chapter 7. The debtor has made full disclosure; he has already settled with his primary creditor (the only active claimant); his health is fragile, and his treating physician warns against ongoing litigation; and he simply wishes to exercise his statutory right of dismissal under 1307(b).

In these circumstances, the Court should dismiss the case, not force it into Chapter 7.

### IV.  THE RESULT ON DEBTOR'S MOTION IS NOT EFFECTED IN ANY WAY BY THE RECENT SUPREME COURT HOLDING IN *MARRAMA v. CITIZENS BANK*.

This analysis would not be complete without a discussion of the Supreme Court's recent holding in Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 127 S.Ct. 1105 (2007).  There, the Supreme Court held that a Chapter 7 debtor does not have an absolute right to convert to Chapter 13.  We mention Marrama, because some creditors have argued, based on Marrama, that a debtor no longer has an absolute right to dismiss his case in Chapter 13. We disagree.

Debtor's position can be summarized as follows: 1) Marrama is limited to cases involving conversion, not dismissal. The better-reasoned cases so hold; 2) Even if, *arguendo,* Marrama applies to voluntary dismissal, it has no application to the facts of this case, because the debtor has made full disclosure and has hidden nothing from the Court – thus, there is no "bad faith" in the sense contemplated by Marrama; and 3) A careful reading of Marrama actually supports debtor's position here.

As a starting point for analysis, the Court should examine the clear differences between the statutory formulation of 11 U.S.C. 706, on the one hand, and 11 U.S.C. 1307, on the other. Section 706 (a) states that a Debtor may convert a case… at any time.  This is roughly equivalent to 11 U.S.C. 1307(a), which states that the Chapter

13 Debtor may "convert a case… at any time". The difference, however, lies in 11 U.S.C. 1307(b). That section states that the Court "shall dismiss" a case on the request of the Debtor. In other words, the statutory schemes are asymmetrical, with Chapter 13 allowing debtors the absolute right to dismiss, but Chapter 7 offering no comparable provision.

Because Marrama deals with conversion, not dismissal, some bankrucpty courts have held that Marrama has no impact on a Chapter 13 dismissal. The Bankrucpty Court in West Virginia held that Marrama is distinguishable, and that it has no application to Chapter 13 dismissal. See In re: Campbell, Slip Opinion attached hereto as **Exhibit D**, citing In re Davis, 2007 Bankr. LEXIS 1751.

Other bankruptcy courts have held that the ruling in Marrama applies to Chapter 13 dismissal as well as Chapter 7 conversion. See In re: Rosson, *supra.* Thus, bankrucpty courts are split on whether Marrama requires a ruling that the Chapter 13 debtor's right to dismiss is not absolute.

However, it is not productive to split hairs over whether Marrama applies to Chapter 13 dismissal. The result here would be exactly the same whether Marrama applies or not. The facts of Marrama are completely distinguishable from the matter at bar; indeed, the facts of Marrama are precisely the opposite of the facts here.

In Marrama the Debtor was guilty of bad faith. He concealed and misrepresented his assets and liabilities. 549 U.S. 365-367, 127 S.Ct. 1105-1107.

14

Then, when Chapter 7 was clearly not working for him, the Debtor tried to convert to Chapter 13. The Debtor in <u>Marrama</u>, unlike the Debtor here, wanted to remain in bankruptcy and reap all of its benefits, through the medium of conversion, after having abused the system. Here, the debtor's actions are the *opposite* – the Debtor disclosed the transfer to his wife from the beginning, explained the reason for that transfer, and proposed to re-convey the property to himself. This Debtor is not guilty of anything even remotely similar to the misrepresentations made by the Debtor in <u>Marrama</u>.

    A careful reading of <u>Marrama</u> actually supports the Debtors position here. Here, the Debtor has made no misrepresentations. All of the information that the Trustee now seeks to use against the Debtor was obtained from the Debtor himself. Moreover, unlike the Debtor in <u>Marrama</u>, the Debtor here does not seek to use the bankruptcy code for his own benefit. He simply wants to dismiss his case. There is no prejudice to anyone. If any creditor seeks to pursue the Debtor, he or she is free to do so in state court.

    In short, <u>Marrama</u> does not apply to a Chapter 13 dismissal, but should be limited to cases involving conversion (where the debtor wishes to remain in the bankrucpty system). Even if, *arguendo*, <u>Marrama</u> does apply to 11 U.S.C. 1307(b), it does not change the result here: this Debtor has not been guilty of bad faith, concealment of assets, or any of the other conduct deplored by the Court in <u>Marrama</u>.

## V.  THE OVERALL EQUITIES CLEARLY SUPPORT DISMISSAL, <u>NOT CONVERSION</u>

All of the equities clearly support dismissal.  As noted above, the debtor's only active creditor has already settled his claim. By dismissing his case, other creditors remain free to pursue the Debtor.  The Debtor is not attempting to use the authority and power of this Court to discharge debts.  He simply wants to dismiss his case, so that he can avoid the pressure of litigation.

We respectfully suggest that the Court should be sensitive to the debtor's medical circumstances.  There is undisputed medical evidence in the case, demonstrating that the Debtor is in a fragile condition.  He has been undergoing treatment for any number of years now.  His medical condition pre-dates the filing of this bankrucpty.  In these circumstances, all doubts should be resolved in favor of granting the debtor's wish to dismiss his case.

## VI. <u>CONCLUSION</u>

This case should be dismissed voluntarily, at the request of the Debtor, and not converted.

          Respectfully submitted

          */S/ Joseph Albanese*
          **JOSEPH ALBANESE**

JA/alr
cc:   Victor Caola
       Albert Russo, Chapter 13 Trustee (Via Email)