# OFFICE OF THE STANDING CHAPTER 13 TRUSTEE

## ALBERT RUSSO

| | | |
|---|---|---|
| Howard Schmidt, Esq.<br>Erik D. Collazo, Esq.<br>*Counsel* | Standing Chapter 13 Trustee<br>1 AAA Drive • Suite 101<br>Robbinsville • New Jersey 08691-1803<br>*Voice (609) 587-6888 • Facsimile (609) 587-9676* | *Mailing Address:*<br>CN 4853<br>Trenton, NJ 08650<br><br>*For payments Only:*<br>PO Box 933<br>Memphis, TN 38101-0933 |

10/29/2009

Honorable Michael B. Kaplan
U.S. Bankruptcy Court
402 East State Street
Trenton, NJ 08608

RE: Victor Caola – Chapter 13 Case No: 08-28385 MBK
    Evidentiary Hearing: 11/24/09 @ 2:00 p.m.

Dear Judge Kaplan:

Please accept this letter brief in lieu of a more formal submission. The issue before the Court may be summarized as to whether §1307(b) gives the Debtor an absolute right to dismiss a Chapter 13 Petition, trumping the discretion of the Court to grant a conversion under §1307(c). In this letter brief, the Trustee will summarize the facts and procedural history, provide the Trustee's legal analysis of various Court decisions, and provide Trustee's argument.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

*PRE – PETITION EVENTS:*

Debtor, Victor J. Caola, was previously engaged in the private practice of Law in the State of New Jersey. Sometime during the calendar year 2007, two State Court civil actions were filed against the Debtor, specifically the matters of Gail Governale vs. Victor J. Caola, Esquire, Superior Court of New Jersey, Law Division, Somerset County, Docket No: L-1141-07, and Nicholas Zarrillo and Carol Zarrillo

1

vs. Victor J. Caola, Esquire, Superior Court of New Jersey, Law Division, Middlesex County, Docket No: L-7442-07. (See Debtor's Statement of Financial Affairs #4.)

Coincidently, or not, by Deed dated 10/17/2007, and recorded 12/4/2007, Debtor and Sally Caola, his wife, transferred their residence, commonly known as 2 Monterey Court, Old Bridge, New Jersey, 08857 ("The Property"), to Sally Caola. The consideration for transfer, as stated on the Deed, was in the amount of $1.00. (See copy of recorded Deed as Exhibit "A"). Simultaneously with the Deed transfers, Debtor's wife, Sally Caola, refinanced The Property borrowing the sum of $309,067.00, and paid off the existing mortgage indebtedness encumbering the subject property in the amount of $197,130.64. As a result of the refinance, Mrs. Caola received the sum of $101,049.18. (See Settlement Statement dated 10/17/2007, with disbursement date of 10/22/07, attached as Exhibit "B"). Mrs. Caola received the proceeds per the above referenced Settlement Statement, specifically, in the amount of $101,049.18. (See Trust Account check of Equititle, LLC dated 10/22/07 attached as Exhibit "C"). By deposit dated 10/25/2007, the sum of $61,149.18 is deposited to the personal savings account of Sally Caola, (see deposit slip and page one of the bank account statement attached as Exhibit "D"), and the sum of $40,000.00 deposited to a Certificate of Deposit in the name of Sally Caola (see Exhibit "E").

*POST BANKRUPTCY FILING*

On 9/25/2008, the Debtor filed his Chapter 13 Petition, such date being within one year of the date of the above referenced Deed transfer, and certainly within the two year fraudulent transfer 'look-back' period of Bankruptcy Code §548. In his Schedule 'A' filed in association with his Petition, Debtor lists his residence and describes the 'Nature of Debtor's Interest in Property' as, "Fee Simple – 50% Interest with Non-Debtor Spouse – Conveying back to joint tenancy". Debtor listed the current value the property as $287,500.00, and the amount of secured claim listed both on Schedule 'A' and Schedule 'D' show a first mortgage lien in the amount of $310,617.00. The Statement of Financial Affairs filed in association

with Debtor's Petition reflects in section #10, 'Other Transfers', as "None". Debtor filed his Chapter 13 Plan on 11/3/08, and proposed to pay $100.00 per month for 60 months. Debtor's liabilities, per filed Schedules, show unsecured debt of $142,242, which sum excludes a monetary sum in association with liabilities related to State Court litigants, Governale and Zarrillo, which were reported as "unknown".

As set forth on the PACER report, the Confirmation Hearing was originally scheduled for 11/25/2008. The Confirmation was adjourned at least six times through 8/4/2009 to attempt to resolve objections by a creditor and the Chapter 13 Trustee. The latest adjournments being the subject of Interim Orders Regarding Confirmation filed by the Chapter 13 Trustee and entered by this Court. By Second Interim Order Regarding Confirmation, filed by the Chapter 13 Trustee and entered by this Court on 6/15/2009, an Evidentiary Hearing was scheduled for 8/4/2009 at 2:00 p.m. to resolve Confirmation issues, specifically, issues related to Trustee Objections to Confirmation, including disposable income issues and the good faith issue related to the transfer of the property. Both Interim Orders Regarding Confirmation stated that on the adjourned date, "the case shall be confirmed, or the Parties shall show cause why Confirmation shall be denied or the case be dismissed or converted".

On the date of the scheduled Evidentiary Hearing, Debtor's counsel appeared and asserted that the Debtor would not be appearing at the Evidentiary Hearing, would no longer prosecute the Confirmation, and would move for a dismissal of the case. The Trustee asserted an objection, requesting that the case be converted from a Chapter 13 to proceed under a Chapter 7. The Clerk then fixed a briefing schedule and that became the date for determination of the dismissal or conversion of the case.

## LEGAL ANALYSIS

*Pre Marrama*

The necessary statutes for analysis are 11 U.S.C. 1307(b), which reads:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112 or 1208 of this title, the Court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

And 11 U.S.C. 1307(c) which reads:

> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of the creditors and the estate, for cause…

Many Courts decided that the plain reading of §1307(b) gives the debtor the absolute right to dismiss a Chapter 13 petition. See *In re Barbieri*, 199 F.3d 616 (2d Cir.1999), *In re Dulaney*, 285 B.R. 10 (D.Colo.2002), *In re Gillian*, 36 B.R. 901 (E.D.Ark.1983), *In re Neivan*, 257 B.R. 105(Bankr.S.D.Fla.2001). These Courts found that the use of the phrase "at any time" and the word "shall", removed any discretion from the Bankruptcy Court to deny dismissal. In coming to this conclusion, Courts like the one in *In re Barbieri* were persuaded by the voluntary nature of the Chapter 13 process.

Notwithstanding the language of §1307(b), many Courts had decided that individual Courts have discretion to grant a conversion under §1307(c). Most of these Courts determined that §1307(c) acts as a limitation on a debtor's right to obtain a voluntary dismissal under §1307(b) and that a "best interests of creditors" analysis must be conducted in order to decide between dismissal and conversion. For example, the Court in *In re Vieweg*, 80 B.R. 838 (Bankr. E.D. Mich. 1987) held that a hearing was necessary under Bankruptcy Rule 9013 to consider the merits of simultaneous motions to convert and for voluntary dismissal. On the facts presented, the Court determined that dismissal was not in the best interests of

4

creditors because it would preclude recovery of prepetition preferences. See also *In re Gaudet*, 132 B.R. 670 (D.R.I. 1991), which further held that the conversion provision contained in §1307(c) operates as a limitation on the debtors right to obtain a voluntary dismissal under §1307(b).[1]

In finding that the right to voluntarily dismiss was limited by §1307(c), the Court in *In re Cobb*, No. CIV.A. 99-3193, 2000 WL 17840, at *3 (ED. La. Jan. 11 2000) stated:

> This Court concludes that the right to dismiss voluntarily under 1307(b) is limited by 1307(c). To conclude otherwise would render 1307(c) nugatory and would encourage abuse of the bankruptcy system. The Court thus finds that when, as here, a creditor has filed a motion to convert a Chapter 13 case on the grounds of fraud, and the motion was filed before the debtor filed a motion to dismiss under 1307(b), the bankruptcy court must conduct a hearing on the two motions.

These and many other Courts have reasoned that an absolute right to voluntarily convert without consideration of §1307(c) would give an unscrupulous debtor unfettered power to abuse the Chapter 13 process through fraud and manipulation. In wrestling with this issue where a Chapter 13 debtor concealed a $1 Million dollar lawsuit, the Court in *In re Johnson*, 228 B.R. 663, 667 (Bankr. N.D.Ill. 1999) opined:

> A debtor with an absolute right to dismissal would have unfettered power to prevent conversion under 1307 (c) by simply filing a motion to dismiss whenever conversion was requested. For all practical purposes, that would render subsection (c) a nullity, an intent that ought not be attributed to Congress…To allow a debtor to respond to a motion to convert by voluntarily dismissing his case with impunity under the foregoing circumstances would render 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses.

The Court in *In re Powers*, 48 B.R. 120, 121 (Bankr. M.D. La. 1985) similarly found that "while the right to dismiss is otherwise absolute, it does not apply where the debtor has filed the case for an improper purpose, in bad faith or to abuse or misuse the bankruptcy process." Meanwhile, the Court in *In re Howard*, 179 B.R. 7, 10 (Bankr. D.N.H. 1995) reasoned that "to provide the debtor wit the right to

---

[1] Gaudet v. Kirshenbaum Inv. Co. (n re Gaudet), 132 B.R. 670, 676 (D.R.I. 1991). Debtors right to voluntarily dismiss a Chapter 13 case under 1307(b) is not necessarily absolute when a creditor has also filed a motion for conversion under 1307(c). Section 1307(c) requires the bankruptcy court to select between conversion and dismissal based on which is in the best interests of creditors and the estate.

5

dismiss under §1307(b) at any time under any circumstance would effectively nullify the involuntary conversion provisions of §1307(c). See also, *In re Molitor*, 76 F.3d 218 (8th Cir. 1996).

*Post Maramma*

In 2007, the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.CT. 1105, 166 L.Ed.2d 956 (2007) reinvigorated the argument between the debtors right to voluntarily dismiss and the Courts authority to convert a petition.

*Marrama* dealt extensively with 11 U.S.C. section 706(a) and 11 U.S.C. section 105(a). Section 706(a) states that:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of his title at any time, if the case has not been converted under section 1112, 1208 or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

Section 105(a) states that:

> The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Prior to *Marrama* it was generally accepted that a Chapter 7 debtor had an absolute right to convert to a Chapter 13. The U.S. Supreme Court in *Marrama*, however affirmed the decision that a debtor's bad faith conduct during their Chapter 7 case justified denial of the debtor's motion to convert. The Court found that the debtor, who acted in bad faith, was not eligible for Chapter 13 relief. In *Marrama*, the Supreme Court held that under Section 706(a) of the Code a debtor does not have an absolute right of conversion despite both legislative history and the anti-waiver provision which state that subsection (a) is an absolute right. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. at 371, 127 S. Ct. 1105.

6

Significantly, the Supreme Court found that the Bankruptcy Court has "broad authority" under either Section 105(a) or its inherent authority to take any action that is "necessary or appropriate" in order to prevent an abuse of the bankruptcy process. Specifically, the Court stated:

> Nothing in the text of either 706 or 1307(c) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor …Indeed even if section 105(a) had not been enacted, the inherent power of every federal court to sanction "abusive litigation practices", might well provide and adequate justification for a prompt , rather than a delayed, ruling on an unmeritorious attempt to qualify as a debtor under Chapter 13.

*Marrama*, 549 U.S. at 374-376, 127 S.Ct. 1105. See also *In re Armstrong*, 208 B.R. 559 at 567 (Bankr. E.D.N.Y. 2009).

In light of *Marrama,* many Courts have recently concluded that the question of "whether a debtor has an absolute right to convert to Chapter 13 under §706(b) is analytically indistinguishable from whether a debtor has an absolute right to dismiss under §1307(b)". In re *Rosson*, 545 F.3rd 764 at 772-773 (9th Cir.2008). The *Rosson* Court held that in light of *Marrama,* the debtor's right of voluntary dismissal under §1307(b) is not absolute, but is qualified by the authority of a Bankruptcy Court to deny dismissal on grounds of bad-faith conduct or "to prevent an abuse of process" pursuant to 11 U.S.C. 105(a). *In re Rosson*, 545 F.3d at 773-774. See also, *In re Fonce* 310 R.R. 809 (S.D.Texas2004)

Significantly, the Court in *Rosson* established that "although the wording of §706(a) is permissive (i.e, "the debtor *may* convert a case…) and the wording of §1307(b) is mandatory (i.e, "on request of the debtor at any time… the Court *shall* dismiss a case…"), the different formulations are not dispositive; the important point established by *Marrama* is that even otherwise unqualified rights in the debtor are subject to limitation by the Bankruptcy Court's power under 105(a) to police bad faith and abuse of process." See *In re Armstrong* 208 B.R. 559 at 569 quoting *In re Rosson*, at 773.

7

The Court in *In re Armstrong* 208 B.R. 559 similarly found that "the *Marrama* reasoning can, and should, lead to the conclusion that a chapter 13 debtor can forfeit his absolute right to dismiss by engaging in fraudulent conduct". *In re Armstrong* at 571. The Court further noted that the idea that Chapter 13 is purely voluntary has been "extended far beyond its intended meaning" and that there is no indication in the legislative history to support the notion that a Chapter 13 debtor can abuse the bankruptcy process and not be held accountable." *In re Armstrong* at 571.

### TRUSTEE'S ARGUMENT

Based upon the cases set forth above, it is the Trustee's position that §1307(b) does not grant a debtor an absolute right to dismiss a case. Such analysis would make subsection (c) a nullity and clearly cannot be interpreted as the intent of the legislature. In analyzing the facts of the case, it is clear that conversion under the non-exclusive conditions set forth in §1307(c), is warranted, specifically, that it is in the best interest of creditors and the Estate to convert the case to a Chapter 7. The Chapter 13 Trustee's investigation and objection included the assertion of a fraudulent transfer to debtor's wife, without fair consideration, in violation of both Bankruptcy §548 and the New Jersey Fraudulent Transfer Statute. Although the issue was not fully evaluated in an Evidentiary Hearing before the Court with respect to Confirmation, the Trustee has raised a bona fide showing of the element of a fraudulent transfer. The creditors of the Estate would best be served by a conversion to a Chapter 7 Trustee, which upon appointment would have a fiduciary duty to investigate the transfer and take action in his/her business capacity to seek recovery for the Estate and creditors.

Section 1307(c) provides that the Court may convert the case to a Chapter 7 or dismiss, whichever is in the best interest of the debtor and Estate, for causes including subsection (c)(1), unreasonable delay by the debtor that is prejudicial to creditors. Certainly, a dismissal, for the reasons set forth above, would be detrimental to creditors, and the procedural history of this case clearly indicates that the debtor has the

benefit of the automatic stay since the date of the Petition filing, 9/25/08, and has unreasonably delayed the proceeding by adjourning the Confirmation process since 11/25/08, the date of the first Confirmation Hearing, and through the failure to prosecute Confirmation and attend the Evidentiary Hearing set by the Court.

In the case at hand, the Trustee has raised a valid objection to confirmation regarding a fraudulent conveyance of real property from the debtor to his wife. In fact, the evidence presented establishes *prima facia* showing of fraudulent transfer avoidable by the Trustee. The debtor is now attempting to use section 1307(b) as a shield from the investigation of any wrongdoing on his part. Under *Marrana* & the Chapter 13 cases that follow the Supreme Court's reasoning, the debtor in this case does not have an absolute right to dismiss, considering the *prima facia* showing of fraudulent transfer and bad faith. Now that the Trustee has uncovered apparent misconduct on the part of the debtor, the Court has in its discretion the right to grant the Trustee's request under §1307(b) for conversion so that a Chapter 7 Trustee investigate and bring any recovery action deemed appropriate. A conversion in this case is warranted to determine what assets may be available for distribution to creditors under best interest of creditors test. To allow the debtor to dismiss his matter now would undoubtedly send a strong message to future debtors that §1307(c) is a dead letter and open up the bankruptcy courts to a myriad of potential abuses.

Respectfully Submitted,

/s/ Albert Russo
/s/ Erik Collazo

Albert Russo and Erik Collazo
AR-EC/amt
Cc: Joseph Albanese, Esquire

9

Exhibit "A"
pg 1

RECORDED
AIME M. FLYNN

# Deed

07 DEC -4 PM 2:55

This Deed is made on **October 17, 2007**

## Between

Victor Caola and Sally Caola, husband and wife

whose post office address is 2 Monterey Court, Old Bridge, NJ 08857

referred to as the Grantor,

## and

Sally Caola, a married woman

whose post office address is 2 Monterey Court, Old Bridge, NJ 08857

referred to as the Grantee.

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

1. **Transfer of Ownership.** The grantor grants and conveys (transfers ownership of) the property (called the "Property") described below to the Grantee. This Transfer is made for the sum of One and 00/100 Dollar ($1.00). The Grantor acknowledges receipt of this money.

2. **Tax Map Reference.** (N.J.S.A. 46:15:1.1) Municipality of Township of Old Bridge
   Block No. 15000.         Lot No. 2                    Account No.

   ☐ No property tax identification number is available on the date of this Deed.
   *(Check box if applicable)*

3. **Property.** The Property consists of the land and all the buildings and structures on the land in the Township of Old Bridge, County of Middlesex and State of New Jersey. The legal description is:

   ☒ Please see attached Legal Description annexed hereto and made a part hereof.
   *(check box if applicable)*

*Prepared by:* (print signer's name below signature)

_____
Victor Caola

*(For Recorder's Use Only*

BK5897PG0705

Exhibit "A"
pg 2

The street address of the Property is: 2 Monterey Court, Old Bridge, NJ 08857.

**4. Type of Deed.** This Deed is called a Quitclaim Deed. The Grantor makes no promises as to ownership or title, but simply transfers whatever interest the Grantor has to the Grantee. The purpose of this deed is to remove Victor Caola.

**5. Signatures.** The Grantor signs this Deed as of the date at the top of the first page. (Print name below each signature).

Witnessed by:

_____ {SEAL}
Victor Caola

_____ {SEAL}
Sally Caola

STATE OF NEW JERSEY, COUNTY OF ___Middlesex___

I CERTIFY that on ___October 17, 2007___, ___Victor Caola and Sally Caola, husband and wife___ personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a) was the maker of this Deed;
(b) executed this Deed as his or her own act; and
(c) made this Deed for $ _1.00_ as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5).

ANTHONY L. A_____ SR.
NOTARY _____
(Print name and title below signature)

---

**RECORD AND RETURN TO:**
Equititle, LLC
2 Monterey Court
Old Bridge, NJ 08857

EXHIBIT "B"



# EQUITITLE

**SETTLEMENT STATEMENT**
Optional Form for Transactions without Sellers
U.S. Department of Housing and Urban Development
OMB Approval No. 2502-0265 (expires 11/30/2009)

| File Number: EQ13277 | Loan Number: P25161 |
|---|---|
| | Mtg. Ins. Case Number: 352-5648728 |
| Settlement Date: 10/17/2007 | Disbursement Date: 10/22/2007 |
| Settlement Agent: | Equititle, LLC |
| Telephone: 732-972-1820 | Fax: 732-972-0430 |
| Place of Settlement: | 2 Monterey Court, Old Bridge, NJ 08857 |

**Name & Address of Borrower:**
Sally Caola
2 Monterey Court, Old Bridge, NJ 08857

**Name and Address of Lender:**
Equity Source Home Loans, LLC and/or The Secretary of Housing and Urban Development
1116 Campus Drive West, Morganville, NJ 07751

Property: 2 Monterey Court, Old Bridge, NJ 08857
Location: Township of Old Bridge

TitleExpress Settlement System
Printed 10/17/2007 at 12:03 JA

| L. Settlement Charges | | M. Disbursement to Others | |
|---|---|---|---|
| 800. Items Payable in Connection with Loan | | 1501. 2007 4th Qtr Taxes | 1,262.32 |
| 801. Loan Origination Fee 0.000% to | | to Township of Old Bridge | |
| 802. Loan Discount 0.000% to | | 1502. ASSOCIATION DUES | |
| 803. Appraisal Fee to MidState    P.O.C.425.00 | | to PAID THRU OCTOBER | |
| 804. Credit Report to CIS | 15.91 | 1503. Assoc Dues Processing Fee | 100.00 |
| 805. Commitment Fee to Equity Source Home Loans, LLC | 495.00 | to Access Property Management | |
| 806. Mortgage Application Fee to Equity Source Home Loans, LLC | 455.00 | 1504. Mtg Payoff#6302930798 | 197,130.64 |
| 807. Flood Cert Fee to SAMCO | 12.00 | to Wells Fargo Home Mortgage | |
| 808. Warehouse Fee to Equity Source Home Loans, LLC | 495.00 | 1505. | |
| 900. Items Required by Lender to be Paid in Advance | | | |
| 901. Interest From 10/22/2007 to 11/01/2007 @$55.8000 per day | 558.00 | 1506. | |
| 902. Mortgage Insurance Premium for to | | | |
| Dept of HUD | 4,567.50 | 1507. | |
| 903. Hazard Insurance Premium for to | | | |
| 904. | | 1508. | |
| 1000. Reserves Deposited with Lender | | | |
| 1001. Hazard Insurance    mo. @ $    per month | | 1509. | |
| 1002. Mortgage Insurance    mo. @ $    129.23 per month | | | |
| 1003. City Property Tax    2 mo. @ $    403.23 per month | 806.46 | 1510. | |
| 1004. County Property Tax    mo. @ $    per month | | | |
| 1005. Annual Assessments    mo. @ $    per month | | 1511. | |
| 1006.    mo. @ $    per month | | | |
| 1007.    mo. @ $    per month | | 1512. | |
| 1008.    mo. @ $    per month | | | |
| 1009. Aggregate Analysis Adjustment to Equity Source Home Loans, LLC | -0.01 | 1513. | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee to Equititle, LLC | 375.00 | 1514. | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | 1515. | |
| 1104. Title Insurance binder | | | |
| 1105. Document Preparation | | 1516. | |
| 1106. Notary Fees | | | |
| 1107. Attorney's fees | | 1517. | |
| (includes above Items No. ) | | | |
| 1108. Title Insurance to Equititle, LLC | 1,355.00 | 1518. | |
| (includes above Items No. ) | | | |
| 1109. Lender's Policy $ 309,067.00 - 850.00 | | 1519. | |
| 1110. Owner's Policy $ - | | | |
| 1200. Government Recording and Transfer Charges | | 1520. TOTAL DISBURSED | 198,492.96 |
| 1201. Recording Fees Deed $80.00; Mortgage $230.00; Release $80.00 | 390.00 | (enter on line 1603) | |
| 1202. City/County tax/stamps | | N. NET SETTLEMENT | |
| 1203. State tax/stamps | | | |
| 1300. Additional Settlement Charges | | 1600. Loan Amount | 309,067.00 |
| 1351. Survey | | | |
| 1352. Pest Inspection | | 1601. PLUS Cash/Check from Borrower | 0.00 |
| 1400. Total Settlement Charges  (enter on line 1602) | 9,524.86 | | |
| | | 1602. MINUS Total Settlement Charges (line 1400) | 9,524.86 |
| | | 1603. MINUS Total Disbursements to Others (line 1520) | 198,492.96 |
| | | 1604. EQUALS Disbursements to borrower (after expiration of any applicable rescission period required by law) | 101,049.18 |

I have carefully reviewed the HUD-1A Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1A Settlement Statement.

Sally Caola

The HUD-1A Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.
SETTLEMENT AGENT By: _____ DATE _____



Account: 1336009673  Check#: 11266  Amount: $101,149.18  Date Presented: 10-25-2007

Exhibit "D"

**SAVINGS DEPOSIT**

| | |
|---|---|
| CURRENCY | |
| COIN | 61,149.18 |
| CHECKS | |
| TOTAL FROM OTHER SIDE | |
| TOTAL | |
| LESS CASH BACK | |
| NET DEPOSIT | 61,149.18 |

DATE 10-25-07

LIST CHECKS SINGLY IF MORE THAN 2 CHECKS LIST ON REVERSE SIDE

ALL ITEMS ARE SUBJECT TO THE RULES AND REGULATIONS PERTAINING TO SAVINGS ACCOUNTS. DEPOSIT MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL.

**Commerce Bank**
America's Most Convenient Bank
1-800-YES-2000

36  11:38 AM  H
Savings Deposit
95 NEWARK

10/25/07  6  2491545640
$61,149.18
84

CUSTOMER SIGNATURE

⑆5041⑆00951⑆ ⑈249⑈1545640⑈ 48

---

SPL 0646040180
R012 B4 P4
10/25/2007

>0312013604
COMMERCE BANK NA
CHERRY HILL, NJ

CURRENCY COUNT — THIS SPACE FOR TELLER USE

| TOTAL | × | × | × | × | × | × | × | × |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 5 | 10 | 20 | 50 | 100 | |
| $ | | | | | | | | $ |

In making this deposit the depositor hereby agrees to be bound by our rules and regulations governing savings accounts and by any changes, modifications or additions thereto

ENTER TOTAL ON THE FRONT OF THIS TICKET

| CHECKS LIST SINGLY | | |
|---|---|---|
| TOTAL | DOLLARS | CENTS |
| $ | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| $ | | |

Account: 2491545640  Check#: 0  Amount: $61,149.18  Date Presented: 10-25-2007



Commerce Bank/North
1100 Lake Street
Ramsey, New Jersey 07446-1275
1-201-825-1000



EXHIBIT "D"
pg 2

009504NNY4N00000340

SALLY CAOLA
2 MONTEREY CT
OLD BRIDGE NJ 08857

*We're here 7 days a week, 24 hours a day at 1-888-751-9000.*

PERSONAL STATEMENT SAVINGS    2491545640

| | | |
|---|---|---:|
| Statement Balance as of 10/24/07 | | $0.00 |
| Plus | 2 Deposits and Other Credits | $61,162.38 |
| Less | 10 Withdrawals and Other Debits | $51,149.18 |
| Statement Balance as of 12/31/07 | | $10,013.20 |

## Transactions By Date

| Date | Description | Debit | Credit | Balance |
|---|---|---:|---:|---:|
| 10/25/07 | DEPOSIT | | $61,149.18 | $61,149.18 |
| 10/29/07 | WITHDRAWAL | $5,000.00 | | $56,149.18 |
| 10/29/07 | WITHDRAWAL | $5,000.00 | | $51,149.18 |
| 11/05/07 | WITHDRAWAL | $5,000.00 | | $46,149.18 |
| 11/05/07 | WITHDRAWAL | $5,000.00 | | $41,149.18 |
| 11/19/07 | WITHDRAWAL | $5,000.00 | | $36,149.18 |
| 11/21/07 | WITHDRAWAL | $5,000.00 | | $31,149.18 |
| 11/23/07 | WITHDRAWAL | $5,000.00 | | $26,149.18 |
| 11/28/07 | WITHDRAWAL | $5,000.00 | | $21,149.18 |
| 12/10/07 | WITHDRAWAL | $6,149.18 | | $15,000.00 |
| 12/24/07 | WITHDRAWAL | $5,000.00 | | $10,000.00 |
| 12/31/07 | INTEREST PAYMENT | | $13.20 | $10,013.20 |

## Interest Summary

| | |
|---|---:|
| Beginning Interest Rate | 0.25% |
| Number of Days in this Statement Period | 68 |
| Interest Earned this Statement Period | $13.20 |
| Annual Percentage Yield Earned this Statement Period (APY) | 0.25% |
| Interest Paid Year to Date | $13.20 |

EXHIBIT "E"

**TIME DEPOSIT TRANSACTION TICKET NORTH**    DATE 10/25/07

CUSTOMER NAME  Sally Coola.
             (Please Print)    PREPARED BY  SJ

CUST. SIGNATURE _____    APPROVED BY _____
             (Signature Required)

STORE #: 1084

DEBIT TC
(55) INTEREST WITHDRAWAL
(86) WITHDRAWAL

CREDIT TC
(38) CD OPENING DEPOSIT

ACCT #: 409026337    TC 38    $ 40 000.00

```
37   11:35 AM  A   10/25/07  6  409026337
New Time Deposit Deposit         $40,000.00
95    NEWARK                     84
```

⑆5063⑈0095⑆

```
SPL 0646044070        >031201360<
P012 B4 P4            COMMERCE BANK NA
10/25/2007            CHERRY HILL, NJ
```

Account:409026337  Check#:0  Amount:$40,000.00  Date Presented:10-25-2007

http://mtl01afscvvip.yesbank.com/scripts/afs/afsweb/AfsWeb.dll?Process?_application=e...    3/13/2009

**Commerce Bank**
*America's Most Convenient Bank®*
1-888-751-9000        NORTH

**Certificate of Deposit**
**Reg DD Maturity Notice**

EXHIBIT "E"
Pg 2

SALLY CAOLA
2 MONTEREY CT
OLD BRIDGE    NJ    08857

Notice Date                01/15/08

For Information Call  1-888-751-9000

Dear Valued Customer,

As noted below your Certificate of Deposit will soon mature. For your convenience, we will automatically renew this Certificate of Deposit for the same term at the market rate in effect at maturity.

If you would like to make any changes to this Certificate of Deposit please visit your nearest Commerce Branch within 10 days after the maturity, with your original certificate.

If you have any questions concerning this letter or if we can be of any further assistance, please call or visit your local branch.

**Thank you for banking with Commerce!**

| | |
|---|---|
| Certificate of Deposit Number | 409026337 |
| Current Balance | $ 40,262.90 |
| Maturity Date | 01/25/08 |
| Next Maturity Date | 04/25/08 |